FILED
2011 Feb-24  PM 01:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

|  |  |  |
|---|---|---|
| CHARLES G. WHITE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-G-0914-J |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Charles G. White, jr., brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## DISCUSSION

This case involves a plaintiff who alleges disability under Listing 12.05C.

Listing 12.05C requires that a claimant have "[a] valid verbal, performance, or full-scale

I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and

significant work-related limitation of function." <u>Davis v. Shalala</u>, 985 F.2d 528, 531 (11th

Cir. 1993)(quoting Listing 12.05C).  When considering whether the plaintiff has a physical

or mental impairment imposing significant work-related limitation of function in addition

to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in

combination.  <u>Davis</u> 985 F.2d at 533.  The issue of what constitutes "a physical or other

mental impairment imposing additional and significant work-related limitation of function"

was addressed in <u>Edwards by Edwards v. Heckler</u>:

> An impairment imposes significant limitations when its effect on a
> claimant's ability to perform "basic work activities" is more than slight or
> minimal.  The question under Listing 12.05C, however, is not whether the
> impairment is in and of itself disabling, thus, "significant" requires something
> less than severe within the meaning of § 404.1520(c) [of the Commissioner's
> Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic

obstructive lung disease and exercise induced asthma provided a sufficient additional

impairment to meet the second prong of Listing 12.05C.).  The second part of the Listing,

therefore, imposes a less stringent requirement than that imposed by 20 C.F.R.

§ 404.1520(c).  Section 404.1520 sets forth the five-step sequential process by which a

claimant's disability is evaluated.  Section 404.1520(c) defines "severe impairment" to

require that the impairment or combination of impairments significantly limit the claimant's

physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a

plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing

12.05C.  Listing 12.00A ("If your impairment satisfies the diagnostic description in the

introductory paragraph and any one of the four sets of criteria, we will find that your

impairment meets the listing.")  The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage
> general intellectual functioning with deficits in adaptive functioning initially
> manifested during the developmental period; i.e., the evidence demonstrates
> or supports onset of the impairment before age 22.  The required level of
> severity for this disorder is met when the requirements in A, B, C, or D are
> satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual

functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet

Listing 12.05C.  In this circuit, it is presumed that a persons I.Q. remains fairly constant

throughout her life and a valid I.Q. test meeting the Listing criteria creates a rebuttable

presumption that the condition manifested itself before age twenty-two.  Hodges v.

Barnhart, 276 F.3d 1265, 1268-69  (11th Cir. 2001).  The Hodges, court recognized that

although this circuit had not formally recognized this presumption, it had been implicitly

3

recognized in <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, she is presumptively disabled under the Listing if the other requirements of the Listing have been met.  <u>Hodges</u>, 276 F.3d at 1269.

The plaintiff argues that he meets Listing 12.05C based upon an I.Q. test when he was around 12 years old, in combination with other physical impairments, including the residual symptoms from a left arm stab wound.  The ALJ found the plaintiff's stab wound symptoms constituted a severe physical impairment.  This satisfies the additional impairment requirement of Listing 12.05C.  Therefore, plaintiff's claim of disability under that Listing depends upon whether he meets the I.Q. score and diagnostic description portions of the Listing.

The Commissioner correctly argues that an I.Q. test at age 12 is only considered valid for two years under the regulations.  However, the ALJ has a duty to fairly and adequately develop the record as to the plaintiff's I.Q.  Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."  <u>Holladay v. Bowen</u>, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting <u>Reeves v. Heckler</u>, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (internal quotation marks omitted).  In this case the ALJ's failure to obtain I.Q. testing constitutes reversible error. The ALJ sent the plaintiff to Dr. Houston, Ph.D for a consultative psychological evaluation.

Doctor Houston diagnosed "Possible borderline intellectual functioning, <u>maybe high Mild</u> <u>[Mental Retardation]</u>." (Emphasis added).   However, Dr. Houston did not perform I.Q. testing.

In his decision, the ALJ found the plaintiff's "possible borderline intellectual functioning" constituted a severe impairment.  However, he failed to even discuss Listing 12.05C in his decision.  When describing Dr. Houston's diagnosis, the ALJ mischarecterized it as follows:  "Dr. Houston diagnosed adjustment disorder, possible borderline intellectual functioning, and alcoholism in remission for two years."  Record 17. Doctor Houston's diagnosis in fact includes the possibility that the plaintiff is mildly mentally retarded.  The ALJ's failure to properly characterize Dr. Houston's diagnosis and his failure to properly consider whether the plaintiff met Listing 12.05C constitute reversible error.

Without I.Q. testing, the ALJ based his decision on an incomplete record. The ALJ was aware that the plaintiff claimed disability based upon Listing 12.05C.  In the face of I.Q. testing at age 12 showing an I.Q. of 68, claimant's allegation that he was illiterate, and Dr. Houston's diagnosis of possible mild mental retardation, the ALJ should have ordered I.Q. testing.  The ALJ's failure to order such testing constitutes a failure to adequately and fairly develop the record.  Accordingly, the action will be remanded for further development of the record as to the plaintiff's I.Q. and level of intellectual functioning.  On remand the Commissioner shall order  a consultative mental examination

by a neuropsychologist specializing in the administration and interpretation of I.Q. testing. The examiner shall be asked to give an opinion as to whether the I.Q. scores obtained are valid and whether the plaintiff meets the diagnostic description of mental retardation contained in the Listings.  Should the Commissioner believe the plaintiff's work history shows an adaptation inconsistent with mental retardation meeting Listing 12.05C, the consultative examiner shall be asked to give an opinion on that issue as well.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 24 February 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

6